ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

MEREDITH L. FLAX
Deputy Section Chief
NICOLE M. SMITH
Assistant Section Chief
BONNIE BALLARD
Trial Attorney (Maryland Bar No. 2211280027)
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 532-5567
Email: bonnie.m.ballard@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES FOREST SERVICE, NATIONAL MARINE FISHERIES SERVICE, and U.S. FISH AND WILDLIFE SERVICE <br><br> Defendants. | **CV 25-66-M-DWM** <br><br><br> **DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |

1

## INTRODUCTION

The U.S. Forest Service ("Forest Service"), U.S. Fish and Wildlife Service ("Fish and Wildlife"), and the National Marine Fisheries Service ("Fisheries Service") considered all relevant factors as part of the agencies' consultation under Section 7 of the Endangered Species Act ("ESA") on the Forest Service's nationwide aerial application of fire retardants. Plaintiff's arguments to the contrary double down on improper reliance on a post-decisional study and fail to show that effects of heavy metals were a "reasonably foreseeable" consideration at the time of the consultation. Moreover, Plaintiff has failed to establish a particularized injury related to species listed under the ESA. Accordingly, the Court should grant summary judgment in favor of Defendants and deny Plaintiff's motion on all claims.

## ARGUMENT

### I.   Plaintiff cannot cure its standing insufficiencies.

Plaintiff's reply brief fails to establish that Plaintiff's members have standing necessary to bring the ESA claims in this case. *Cf.* Dkt. No. 23 ("Pls. Reply Br.") at 4-6. To establish a procedural injury, a plaintiff "must show that *the procedures in question* are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (emphasis added) (citation

omitted). Here, the "procedure[] in question" is Section 7 consultation under the ESA, which is designed to advance protection of specific ESA-listed species. *Id.* But as explained in Defendants' opening brief, Plaintiff's members only allege broad interest in recreating in national forests and do not specify a concrete interest in individual species listed under the ESA, nor whether those species are present in the national forests Plaintiff's members have an interest in. Dkt. No. 21 ("Defs. Op. Br.") at 7-8.

Plaintiff's cited cases do not salvage its argument because the plaintiffs in those cited cases did have specific interests in individual ESA-listed species. *See Nat. Res. Def. Council v. U.S. Env't Prot. Agency,* 38 F.4th 34, 54 (9th Cir. 2022) (describing Plaintiffs' established interests in "recreational activities involving a variety of endangered species, including the Indiana bat, whooping crane, and least tern"); *Friends of Santa Clara River v. U.S. Army Corps of Eng'rs,* 887 F.3d 906, 919 (9th Cir. 2018) (describing plaintiff's concrete interest as specific to steelhead trout). Plaintiff has not made a similar showing of interest in specific ESA-listed species here and thus has not made the required showing of an injury-in-fact for its ESA claims. Thus, even if Plaintiff has established Article III standing, Plaintiff has failed to establish standing under the ESA and the suit should be dismissed. *See Gutierrez*, 545 F.3d at 1225.

**II.    Plaintiff fails to show that the agencies did not consider all available scientific data at the time of the consultation.**

Plaintiff's arguments regarding the merits of the consultation continue to misrepresent the risk assessments relied on by the agencies and instead rely on post-decisional information based on a study published in October of 2024 ("2024 Study"). First, while the ecological risk assessment did conduct a "whole-mixture" analysis, it also separately conducted stressor-specific analyses despite Plaintiff's claims, Pls. Reply Br. at 8. To assess the toxicity of fire retardant chemicals on listed species and their critical habitat, the agencies relied on an ecological risk assessment that screened each ingredient in the product formulations submitted by the chemical manufacturers. FS072298-FS072329. Risk from any ingredient with toxicity exceeding a specific screening threshold was then separately quantified. *Id*. The stressor-specific analyses did not include heavy metals because they were not specifically identified by the chemical manufacturers as a component of fire retardant chemicals at the time the agencies were engaged in consultation. *Id.* Thus, the agencies reasonably relied on these standard testing protocols to assess overall toxicity.

Plaintiff's assertion that toxic metals were a "foreseeable harm" during the consultation is completely unsupported, Pls. Reply Br. at 9. While it is true that courts have invalidated biological opinions that omit "recognized effects categories," *id.*, heavy metals were not a known ingredient in fire retardants chemicals at the time of the consultation and thus could not be considered a

recognized effect category. This is precisely why Plaintiff relies so heavily upon a post-decisional study as the backbone of its arguments.

To be sure, in *Pacific Coast Federation of Fishermen's Associations v. Gutierrez,* 606 F. Supp. 2d 1122 (E.D. Cal. 2008), the court invalidated the challenged biological opinions in part because even though "readily available scientific data existed regarding the potential effects of global climate change on the hydrology of the Project area river systems," the agency did not discuss the available data or consider it. *Id.* at 1184. By contrast here, Plaintiff cannot point to any scientific studies discussing heavy metals in fire retardant chemicals that were readily available at the time of the consultation.

Moreover, Plaintiff's argument that the 2024 Study is merely a "confirmation of a well-established scientific principle," Pls. Reply Br. at 7, is also unsupported. This argument continues to ignore basic evidentiary principles in record review cases such as this one. The study Plaintiff relies on was published years after the agencies finalized the challenged biological opinions. It would be unreasonable for the agency to guess at the possible ingredient list based on a "well-established scientific principle," *id.*, that was not scientifically examined or published until after the consultation was complete. Further, when reviewing the sufficiency of a biological opinion, the court's review is limited to the information before the agency at the time of the scrutinized decision. *San Luis & Delta-*

5

*Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014). The agency also does not need to conduct new tests or make decisions on data that does not yet exist. *Id.* at 995 ("The [best-available-science] standard does not, however, require an agency to conduct new tests or make decisions on data that does not yet exist."); *Unite the Parks v. U.S. Forest Serv.*, No. 121CV00518DADHBK, 2022 WL 2128728, at *7 (E.D. Cal. May 27, 2022).

It defies logic to allege that the agencies failed to consider all relevant factors based on a study that did not exist before the agencies' decisions were completed. *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 944 (9th Cir. 2006) (refusing to consider a post-decisional document for the purpose of analyzing "whether the Forest Service [had] considered all of the relevant factors" in its decision (citing *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996))). To that end, Plaintiff's sole reliance on "post-decision information" in the form of the 2024 Study is fatal to Plaintiff's claims, as that study "cannot be used to challenge the merits of the agency's decision." *See Friends of Clearwater v. Petrick*, 588 F. Supp. 3d 1071, 1084 (D. Idaho 2022) (citing *Ctr. for Biological Diversity*, 450 F.3d at 944).

## III. The Court should reject Plaintiff's attempt to bring a claim alleging that the agencies are required to reinitiate consultation.

For the first time on reply, Plaintiff asserts a completely new claim – that the agencies were required to reinitiate consultation based on new information

revealed in the study. Pls. Reply Br. at 7. But Plaintiff's Amended Complaint only alleged claims based on the completed consultation and associated documents and did not allege facts to support a failure to reinitiate claim. *See* Pls. Am. Compl., Dkt. No. 3 ¶¶ 13-14 (alleging ESA and APA violations based on deficiencies in the Forest Service's biological assessments and the consulting agencies' biological opinions).

Plaintiff's "attempt to add such a claim at the summary judgment stage is impermissible." *Echlin v. PeaceHealth*, 887 F.3d 967, 978 (9th Cir. 2018); *Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." (citation omitted)); *Pickern v. Pier 1 Imports (U.S.), Inc.,* 457 F.3d 963, 968–69 (9th Cir. 2006) (holding that the complaint did not satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a) because the complaint "gave the [defendants] no notice of the specific factual allegations presented for the first time in [the plaintiff's] opposition to summary judgment"). The Court should reject Plaintiff's backdoor attempt to amend its complaint to assert a new claim for the first time in its Reply.

To the extent Plaintiff argues that the reference to reinitiation of consultation is an argument directed at remedy rather than the merits, Defendant agencies are not attempting to avoid reinitiation requirements, if ultimately the regulatory

triggers for reinitiation of consultation are met. *Cf.* Pls. Reply Br. at 7. To the contrary, after review of the 2024 Study, the Forest Service determined that additional information on heavy metals was needed and subsequently entered into an agreement with the U.S. Geological Survey to conduct tests that examine heavy metals in retardants used by the Forest Service so that the Forest Service can compare results against published studies. *See* Decl. of Adam Mendonca ¶ 13 ("Mendonca Decl."). These tests will allow the Forest Service to determine if reinitiation is appropriate under 50 C.F.R. 402.16(a) based on whether there is new information that reveals effects of the action in a manner or to an extent not previously considered. *Id.* Thus, even if the Court were to accept Plaintiff's newly alleged failure to reinitiate claim, that claim similarly lacks merit.

**IV.    If there are any errors, the Court should remand without vacatur.**

Even if the Court were to find a legal violation, the Court should reject Plaintiff's request to vacate the Biological Opinions because the disruptive consequences of vacatur far outweigh the seriousness of any finding of error here. Plaintiff's weak attempt at showing that vacatur is warranted underestimates the importance of aerial fire retardant and fails to identify any specific alleged harm to listed species or their critical habitats absent vacatur of the Biological Opinions.

Importantly, Plaintiff has not shown that the balance of equities favors vacatur. Plaintiff asserts that though vacatur would halt use of aerial fire

suppressants, it "would not stop fire suppression efforts." Pls. Reply Br. at 10. But aerial application of fire retardant is an essential component to fire suppression activities and is significantly more effective than water. Mendonca Decl. ¶¶ 6-7, 9-12. Indeed, use of aerial fire retardant decreases a wildfire's intensity and slows the advance of the fire even after the water originally contained in the retardant mixture has evaporated. *Id.* at ¶ 10. Because vacatur of the Biological Opinions could create uncertainty about how aerial fire retardant can be used by the Forest Service, vacatur here could hinder the Forest Service's ability to suppress wildfire on National Forest System lands at the beginning of a predicted extreme wildfire season in the Western United States. Thus, vacatur may "cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error." *All. for Wild Rockies v. Marten,* No. CV 17-21-M-DLC, 2018 WL 2943251, at *3 (D. Mont. June 12, 2018) (citation omitted).

Another court in this District recently denied a request by the same Plaintiff in this case to enjoin the Forest Service's aerial application of fire retardant based on the same potential consequences of vacatur discussed above. *See Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 674 F. Supp. 3d 959 (D. Mont. 2023). In that case, the court concluded that the "requested injunction could conceivably result in greater harm from wildfires—including to human life and property and to the environment—by preventing the [Forest Service] from effectively utilizing one

of its fire fighting tools." *Id.* at 967.

By contrast, to the extent the Court finds any errors here, they do not rise to the level of serious error warranting vacatur. Effects to listed species identified in the Biological Opinions are expected to be rare, as they are primarily expected to occur in the event that retardant is dropped in mapped avoidance areas for listed species and their critical habitats. FWS-00005258. Aerial retardant drops are not allowed in mapped avoidance areas or waterbodies or their established buffers under the Biological Opinions except where human life or public safety are threatened. FWS-00005130. When an intrusion occurs into an avoidance area or body of water for any reason, it is required to be reported, assessed for impacts, monitored, and remediated as necessary. FWS-00005131. In addition, years of intrusion data reveals that less than one percent of retardant drops have resulted in intrusions into avoidance areas. FWS-00005080-81; *see also* Mendonca Decl. ¶ 8. Given the high level of avoidance already implemented as the best management practice, additional analysis of heavy metals is an issue the agency can readily address on remand. Accordingly, if the court were to find a legal violation, the Court should remand without vacatur. *See Nat'l Fam. Farm Coal. v. U.S. Env't Prot. Agency*, 966 F.3d 893, 929 (9th Cir. 2020) (remanding without vacatur even though the agency failed to consider harm to monarch butterflies caused by killing target milkweed because the agency will likely adopt the same rule on remand).

## CONCLUSION

For the reasons discussed above, the Court should deny Plaintiff's motion

for summary judgment, and grant summary judgment for Defendants on all claims.

Dated: May 19, 2026                    Respectfully submitted,

                                       ADAM R.F. GUSTAFSON
                                       Principal Deputy Assistant Attorney General
                                       MEREDITH L. FLAX
                                       Deputy Section Chief
                                       NICOLE M. SMITH
                                       Assistant Section Chief

                                       */s/ Bonnie Ballard*
                                       BONNIE BALLARD
                                       Trial Attorney (Maryland Bar No.
                                       2211280027)
                                       United States Department of Justice
                                       Environment & Natural Resources Division
                                       Wildlife & Marine Resources Section
                                       Ben Franklin Station
                                       P.O. Box 7611
                                       Washington, DC 20044-7611
                                       Tel: (202) 532-5567
                                       Fax: (202) 305-0275
                                       Email: bonnie.m.ballard@usdoj.gov

                                       *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I hereby certify that this brief uses 14-point font and contains 2,195 words, excluding material that Local Rule 7.1(d)(2)(E) omits from the word-count requirement. I relied on Microsoft Word to obtain the word count.

/s/ *Bonnie Ballard*
BONNIE BALLARD