Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807-7051
406-721-1435
tim@bechtoldlaw.net

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE, NATIONAL MARINE FISHERIES SERVICE, and U.S. FISH AND WILDLIFE SERVICE<br><br>Defendants. | **CV 25-66-M-DWM**<br><br>**PLAINTIFF'S REMEDY BRIEF** |

**Introduction**

This Court found that Federal Defendants violated the Endangered Species Act's best-available-science requirement because they claimed to evaluate each retardant formulation "as a whole" while omitting every unidentified trade-secret ingredient and its screening result without explanation. The Court held that the

omission "permeates" all aspects of the agencies' decisions. Doc. 29 at 27-32. A remand that leaves those decisions in place indefinitely would not remedy that violation; it would reduce the judgment to a request that the agencies do better when convenient.

Plaintiff requests vacatur with a short, protective stay. The Court should 1) vacate the 2022 NMFS and 2023 FWS Biological Opinions, 2) stay the effect of vacatur only until the earlier of valid replacement biological opinions or 365 days, 3) preserve all existing avoidance measures and take limits during that interval, and 4) retain jurisdiction. Plaintiff asks the Court to order that, within 60 days, the Forest Service must transmit the complete formulations, screening results, and available metals-testing data to the consulting agencies. Further, Plaintiff asks the Court to require that the agencies must issue replacement biological opinions within one year. If they do not, the Court should order that the stay expires automatically.

This remedy neither grounds aircraft nor dictates a scientific result. It permits continued use under the present safeguards for one fire season while ensuring that remand cannot become the open-ended process now unfolding in Plaintiff's Clean Water Act retardant case.

**I. Vacatur with a one-year stay is warranted and avoids disruption.**

The APA directs a reviewing court to "set aside" unlawful agency action. 5 U.S.C. §706(2)(A). Vacatur is the traditional remedy, and invalid agency action remains in place only when equity demands it. *Committee for a Better Arvin v. EPA*, __F.4th__, 2026 WL 2251528 at *8 (9th Cir. Aug. 5, 2026); *Alliance for the Wild Rockies v. U.S. Forest Service*, 907 F.3d 1105, 1121 (9th Cir. 2018). The Court weighs the seriousness of the error and the disruptive consequences of an interim change, including whether vacatur itself could cause environmental harm. *California Communities Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012); *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015).

The error here is serious under the Court's own findings. The record contains no complete ingredient list for any Qualified Products List formulation, no screening results for the omitted components, and no explanation for removing the chemical profiles from Appendix B of the Biological Assessment. Doc. 29 at 27-31; FS000258. The omission is important because the Risk Assessment recognized mixture effects, and record literature warned that unknown proprietary components could influence toxicity and fish mortality. Doc. 29 at 29-30. The Court therefore could not confirm that the agencies analyzed the formulations as a whole, and held that the omission permeated every jeopardy and adverse-

modification determination. Doc. 29 at 31-32. This is not a limited paperwork defect, and the agencies cannot show that the same opinions are inevitable on a complete record. *Pollinator*, 806 F.3d at 532.

Federal Defendants identify one disruption: immediate vacatur could create uncertainty over aerial-retardant use during wildfire response. Doc. 25 at 8-10. Immediate vacatur could also remove the Biological Opinions' aquatic-avoidance criteria, reasonable and prudent measures, terms and conditions, and incidental-take limits. Those concerns justify a temporary stay, but not an indefinite remand without vacatur. *Committee for a Better Arvin* is instructive: the Ninth Circuit left invalid contingency measures temporarily in place because eliminating them would create a protective gap. 2026 WL 2251528 at *8. The same equitable bridge works here. Existing operational safeguards remain binding for no more than 365 days while the agencies cure the violation. The Forest Service keeps every firefighting tool; listed species do not lose existing protections; and vacatur retains legal consequence.

**II. Replacement biological opinions must issue within one year.**

A date certain for remand is essential. In Plaintiff's related Clean Water Act case on retardant, this Court found in May 2023 that the Forest Service was discharging retardant unlawfully, allowed use to continue while an NPDES permit

was pursued, and required periodic status reports. *Forest Service Employees for Environmental Ethics v. U.S. Forest Service*, 674 F.Supp.3d 959, 967-69 (D. Mont. 2023). Now, three years later, EPA has reported that it had withdrawn the draft permit from OMB review on April 17, 2026, for further internal deliberation, with no completion date. *Id.*, No. 9:22-cv-168-DLC, Doc. 69 at 2 (D. Mont. Aug. 3, 2026). Status reports have documented the agencies' delay; the status reports required by the Court have not prompted the agency to actually attempt to obtain an NPDES permit.

The Ninth Circuit has rejected cycles of partial status reports, missed deadlines, and vague promises of future action where health and environmental protection depend on agency action, and has imposed a firm completion date. *In re Pesticide Action Network North America*, 798 F.3d 809, 813-15 (9th Cir. 2015). Interim measures likewise must be subject to deadlines or otherwise enforceable obligations. *National Wildlife Federation v. National Marine Fisheries Service*, 524 F.3d 917, 936 & n.17 (9th Cir. 2008). Quarterly progress reports are useful only when paired with an endpoint.

One year is more than sufficient here to issue replacement biological opinions. At oral argument, Federal Defendants's attorney confirmed that every ingredient, including each trade-secret ingredient, already was available to all three

agencies. Doc. 29 at 31. Their interagency agreement began in June 2024, scheduled Phase 1 bulk and use-level testing for completion by January 2026, and admits that metals may be present as trade-secret components or impurities in mined phosphate salts. Doc. 25-1 at 22-26. The agencies therefore begin remand with the withheld formulas, an existing screening method, and commissioned testing already underway or due.

Moreover, completion should not await every study the agencies may someday undertake. Phases 2 and 3 extend into 2027, depend on later discussions and funding, and may be reprioritized or modified by the Forest Service. Doc. 25-1 at 22, 25-26. Section 7 requires decisions based on the best science available when the decisions are made; an agency may not defer jeopardy analysis by promising future studies. *Natural Resources Defense Council v. Kempthorne*, 506 F.Supp.2d 322, 359 (E.D. Cal. 2007). The replacement biological opinions must use information then available, explain uncertainty, and issue within 365 days.

The urgency is not abstract. On August 4, 2026, eight Members of Congress asked GAO to investigate toxic metals in federal wildfire retardants, noting that federal agencies used 48.6 million gallons in 2024, estimating 380,000 kilograms of toxic metals released between 2009 and 2021, and identifying elevated metals reported in northern New Mexico groundwater. Exhibit 1, Aug. 4, 2026 GAO

Request Letter. The letter is not offered here to prove causation or relitigate the effects-analysis claim. Rather, it shows why questions concerning nationwide water supplies, listed species, and human health should not remain unresolved on an agency-controlled timetable.

**III. The order should define the required cure without dictating methodology.**

The remand order should require the Forest Service, within 60 days, to provide NMFS and FWS: (1) the complete formulation of every aerial long-term retardant then on the Qualified Products List, including proprietary components and reasonably ascertainable constituents or impurities; (2) the actual screening result for each component, screened in or out; (3) the chemical profiles removed from Appendix B and kept by the Wildland Fire Chemical Systems program; and (4) all interim and final USGS metals results then in its possession. This is the information the Court found missing, not a judicially selected testing protocol.

The replacement opinions must evaluate each formulation as a whole, address mixture effects, use the best scientific and commercial data then available, and explain any exclusion or uncertainty. 16 U.S.C. §1536(a)(2); 50 C.F.R. §402.14(g)(8). Legitimate trade secrets may be transmitted confidentially and lodged under seal. But proprietary labeling cannot excuse non-disclosure among the agencies or omission from the certified remand record, and measured

concentrations and nonproprietary analytical results should be public absent a particularized showing supporting sealing.

This relief does not revive the reinitiation claim the Court rejected as unpled. It does not depend on 50 C.F.R. §402.16 or ask the Court to decide what the agencies must conclude about metals. It is ordinary vacatur and remand to replace the biological opinions found unlawful on the formula-analysis claim. *Conner v. Burford*, 848 F.2d 1441, 1453-54 (9th Cir. 1988).

**IV. Interim protections and automatic vacatur make the remedy enforceable.**

During the one-year stay, every existing avoidance criterion, reasonable and prudent measure, term and condition, intrusion-reporting requirement, and take limit must remain binding and must not be weakened. If the Forest Service adds or materially reformulates an aerial long-term retardant during the stay, it should first transmit the complete formulation and screening information to both consulting agencies and obtain their written determination that the interim opinions cover the change. This Court should order Federal Defendants to file joint progress reports with the Court every 90 days identifying completed milestones, outstanding information, and the expected dates of draft and final opinions.

The Court should retain jurisdiction. The Court should order that any extension request from the agencies should be filed at least 60 days before the

deadline and supported by evidence of extraordinary, unforeseen circumstances, and should not be based on competing priorities or plans for additional study. If the agencies have not issued valid replacement biological opinions by day 365, the Court should order that the stay dissolves and vacatur should take effect automatically without another merits motion. Plaintiff should also be allowed the right to seek further incident-specific or programmatic relief on the record then existing.

**Conclusion**

Plaintiff respectfully requests an order:

1. vacating the NMFS 2022 and FWS 2023 Biological Opinions and remanding them for compliance with the Court's merits ruling;
2. staying the effect of vacatur until the earlier of valid replacement biological opinions or 365 days, while preserving all existing operational protections;
3. requiring the Forest Service's complete data transmission within 60 days and replacement Biological Opinions within 365 days;
4. requiring 90-day joint progress reports and retaining jurisdiction; and
5. providing that the stay expires and vacatur becomes effective automatically if the one-year deadline is missed.

This remedy gives the agencies one fire season to cure the precise violation

found, preserves present safeguards while they do so, and ensures that remand ends in lawful decisions rather than another indefinite series of status reports.

DATED this 26th day of August, 2026.

/s/ Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief is in 14-point font and has 1723 words, exclusive of any tables and certificates.

/s/ Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC