ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

MEREDITH L. FLAX
Deputy Section Chief
NICOLE M. SMITH
Assistant Section Chief
BONNIE BALLARD
Trial Attorney (Maryland Bar No. 2211280027)
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 532-5567
Email: bonnie.m.ballard@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE, NATIONAL MARINE FISHERIES SERVICE, and U.S. FISH AND WILDLIFE SERVICE<br><br>Defendants. | **CV 25-66-M-DWM**<br><br>**DEFENDANTS' REMEDY BRIEF** |

## INTRODUCTION

The settled rule in administrative-law cases is that once "an error of law is laid bare," the matter returns to the agency for reconsideration. *Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952). While courts may grant additional relief in "rare circumstances," such circumstances are not present in this case. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). As relevant here, vacatur of the U.S. Fish and Wildlife Service's and the National Marine Fisheries Service's ("Wildlife agencies") Biological Opinions is not warranted. Defendant agencies can readily and easily address the deficiency identified by the Court's Opinion and Order, Dkt. No 29, through a limited remand without changing the Biological Opinions' effects analyses, jeopardy determinations, or take conclusions. Moreover, the disruptive consequences of vacatur are substantial. Vacatur would create uncertainty regarding the Forest Service's ability to effectively use aerial fire retardant in its efforts to suppress wildfire, which could increase the risk to human life, property, and the environment posed by wildfires that have consistently increased in both prevalence and intensity over the last several decades. Likewise, Plaintiff has not made the required showing that it is entitled to any form of injunctive relief. A remand without vacatur is the only remedy proportionate to the errors identified by the Court in this case. Accordingly, the Court should deny Plaintiff's request for injunctive relief and remand the Biological Opinions to the

agencies without vacatur.

## ARGUMENT

### I. Vacatur of the Biological Opinions is not warranted.

When a court finds an agency action unlawful, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co.*, 470 U.S. at 744. Indeed, the Ninth Circuit has made clear that courts are not reflexively "required to set aside every unlawful agency action." *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995); *see also Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam) (holding that when "equity demands," courts may leave in place an agency action "'while the agency follows the necessary procedures' to correct" its error (citation omitted)). In determining whether agency action should be vacated, courts should examine (1) the seriousness of the deficiency and the likelihood of an agency cure on remand, and (2) the disruptive consequences that vacatur would impose. *See Cal. Cmtys*, 688 F.3d at 992-94 (citing *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993)). As explained below, both of these factors favor remanding to the agencies without vacatur.

#### A. The deficiency identified by the Court does not rise to the level of seriousness that warrants vacatur and can easily be addressed on remand.

First, the "seriousness of the error" factor favors remand without vacatur

because the error identified by the Court can be readily addressed by further explanation from the agencies. When analyzing the seriousness of the agency's error, courts consider "whether the agency would likely be able to offer better reasoning" on remand. *Pollinator Stewardship Council v. EPA,* 806 F.3d 520, 532 (9th Cir. 2015). Courts also consider whether the errors are "limited in scope." *All. For the Wild Rockies v. Savage,* 375 F. Supp. 3d 1152, 1156 (D. Mont. 2019). When a court finds that an agency's *explanation* of its decision is inadequate, the proper course generally is to remand to the agency for further explanation. *See Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curiam).

Here, the error identified by the Court does not rise to a level of seriousness that warrants vacatur, as it was "limited in scope" and can be readily explained by the agency on remand. The Court specifically found that the agencies failed to "articulate a satisfactory explanation" for why their consultation documents omitted "trade secret ingredients and their screening results." Dkt. No. 29 at 31-32. Yet, there is a clear explanation as to why proprietary ingredients were not listed in the Wildlife agencies' Biological Opinions, which the agencies can readily provide on remand. The lack of reference to proprietary ingredients stems from the agencies' obligations under the Federal Trade Secrets Act, 18 U.S.C. § 1905, which makes the government's disclosure of trade secrets a criminal offense. While the Wildlife agencies were provided the proprietary ingredients in retardant formulas during the

course of the consultation, certain conditions were necessarily applied to the agencies' review of proprietary information to ensure compliance with the law. *See* Ex. 1 (NOAA Fisheries Nondisclosure Agreement) (noting that "NOAA Fisheries may review and use the Proprietary Information" to conduct analyses of the effects of species "affected by fire chemicals" pursuant to the "consultation process[] outlined within the Endangered Species Act (ESA).").

Thus, while not evident in the record before the Court, the "screened-in" ingredients analyzed by the Risk Assessment included *all* ingredients in each fire retardant formulation – including proprietary ingredients. *See* FS072333. Accordingly, the agencies can confirm on remand that they did in fact analyze all known ingredients and can provide further explanation on why proprietary ingredients were necessarily omitted from publicly disclosed consultation documents.[1] Such explanation would not supply a new biological rationale, rely on new effects analysis, or alter how the Forest Service applies aerial fire retardant. Nor would that limited clarification require reinitiating consultation, which is only triggered under specific circumstances, such as where the amount or extent of take is exceeded, new information reveals effects not previously considered, the action is modified in a way that causes effects not previously considered, or a new species is

[1] Should the Court find it necessary to review specific proprietary information, Defendants can provide such information subject to a stipulated protective order entered by the Court.

listed or critical habitat designated that may be affected. 50 C.F.R. § 402.16(a).[2]

Because the agencies can offer further explanation (and cure the deficiencies identified by the Court) without changing the underlying analysis or conclusions in the Biological Assessment and Biological Opinions, these documents are not further compromised by the Court's decision. Thus, the seriousness of the error factor weighs squarely in favor of remanding to the agencies without vacatur. *See FDA v. Wages & White Lion Invs*., L.L.C., 604 U.S. 542, 590 (2025) (noting that no remedy is warranted "when it is clear that the agency's error had no bearing on the procedure used or the substance of the decision reached" (citation modified)).

**B. The disruptive effects of vacatur significantly outweigh the seriousness of the deficiency identified by the Court.**

In contrast, the disruptive consequences of vacatur far outweigh the seriousness of the error here. Many parts of the Western United States are facing a record-breaking wildfire season, and, as explained in Defendants' Reply Brief, aerial application of fire retardant is an essential component to the Forest Service's fire suppression activities. Dkt No. 25 at 9 ("Defs.' Reply Br."). Wildfires have been growing in size, duration, and destructiveness over the past twenty years, and the

[2] While the agencies need not reinitiate to address the omission of proprietary ingredients from the consultation documents, the Forest Service is still awaiting results from tests examining heavy metals in retardant formulas, at which point the agencies can determine if reinitiation is appropriate under 50 C.F.R. 402.16(a). *See* Dkt. No. 25-1 ¶ 13, Declaration of Adam Mendonca ("Mendonca Decl.").

prevalence of high intensity and fast-spreading fires inhibits the Forest Service's ability to fight wildland fires safely with ground-based forces alone. Mendonca Decl. ¶¶ 4, 6. Once a fire exhibits extreme fire behavior, fire retardant becomes an essential component of successful wildfire suppression because its chemical make-up changes the way vegetation burns, which allows firefighters to safely build longer-lasting holding lines to stop fire spread. *Id.* ¶ 2, 6. Studies have also shown that fire retardant outperforms pure water in reducing spread rate of fire, further highlighting the importance of fire retardant for successful fire suppression efforts. *Id.* ¶¶ 10-12.

Vacatur of the Biological Opinions would create uncertainty about the Forest Service's use of aerial fire retardant during the pendency of the remand period, which could slow down responses to active wildfires and impede the Forest Service's ability to suppress wildfire on National Forest System lands at the height of an unprecedented wildfire season. Not only could this threaten human life and property, but it could also threaten the species and habitat that Plaintiff has expressed a desire to protect. Indeed, wildfire is a primary threat to numerous threatened and endangered species, and hindering the Forest Service's ability to adequately suppress wildfires may increase that threat and potentially push certain species closer to extinction. *See, e.g.*, U.S. Fish & Wildlife Serv., April 2026 Species Status Assessment for Columbia Basin Distinct Population Segment of Pygmy Rabbit at 50, https://iris.fws.gov/APPS/ServCat/DownloadFile/300990 (noting that "a single

wildfire could result in the species' extinction"); Nat'l Marine Fisheries Serv., 2024 5-Year Review: Summary and Evaluation of California Central Valley Steelhead at 18, https://doi.org/10.25923/b61a-ef11 ("A major emergent habitat concern. . . is the increased frequency and severity of drought and large, unprecedented wildfires"); Endangered Species Status for S. Sierra Nev. Distinct Population Segment of Fisher, 85 Fed. Reg. 29532, 29539-40 (May 15, 2020) (noting that wildfire is a significant threat to the endangered distinct population segment of fisher).

By contrast, the Biological Opinions incorporate numerous mitigation measures to minimize potential effects to listed species and their critical habitats. The Forest Service minimizes retardant exposure to listed species through implementing required avoidance areas for *all* aquatic species and aquatic critical habitat, meaning that no application of fire retardant can occur within 300 feet of any waterbody, except when human life or public safety are threatened. FWS-00005257. In addition, almost all of the species that are likely to be adversely affected are also required to have mapped avoidance areas where fire retardant may not be applied except when human life or public safety are threatened. FWS-00005257-58. The Forest Service also monitors where retardant drops occur, which helps inform likely effects and allows consideration of whether additional restrictions to aerial retardant use are needed. FWS-00005259. These mitigation measures have proven to be very effective – since 2012, less than one percent of fire

retardant drops have occurred in avoidance areas. Mendonca Decl. ¶ 8.

To that end, vacating the Biological Opinions "could result in possible environmental harm" by increasing the risk of harm from wildfire to listed species, which is exactly the sort of adverse consequence that has led other courts to decline to vacate a faulty agency decision. *See Pollinator Stewardship Council*, 806 F.3d at 532; *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405-06 (9th Cir. 1995) (declining to vacate rule where it could result in extinction of a species).

Moreover, as explained in Defendants' Reply Brief, another court in this District recently denied a request by the same Plaintiff to enjoin the Forest Service's aerial application of fire retardant due to the risk of "greater harm from wildfires—including to human life and property and to the environment—by preventing the [Forest Service] from effectively utilizing one of its fire fighting tools." *Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 674 F. Supp. 3d 959, 967 (D. Mont. 2023).[3] The same principles apply here, as vacating the Biological Opinions would hinder the Forest Service's fire suppression efforts, which could "cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error." *All. for Wild Rockies v. Marten,* No. CV 17-21-M, 2018 WL 2943251, at *3 (D.

[3] The court in this case also denied a second request for an injunction for largely the same reasons even though the Forest Service had not yet obtained the required Clean Water Act permit. *See Forest Serv. Emps. for Env't Ethics v. United States Forest Serv.*, No. CV 22-168-M, 2025 WL 1632228, at *1 (D. Mont. May 19, 2025).

Mont. June 12, 2018) (citation omitted).

In sum, the disruptive consequences of vacatur far outweigh the seriousness of the errors identified by the Court, which can be sufficiently addressed on remand. The Court should therefore remand to the agencies without vacatur.

## II. To the extent the Court considers Plaintiff's request for injunctive relief, that request should be denied.

Plaintiff also requests "injunctive relief to compel the Forest Service to comply with applicable environmental statutes, prevent irreparable harm, and satisfy the public interest." Dkt. No. 3 at 10. That request should likewise be denied. Injunctive relief requires a separate equitable showing; Plaintiff must show that (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) the balance of hardships weighs in Plaintiff's favor; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006).

Plaintiff has not – and cannot – make that showing. Plaintiff has not identified any specific harm that would occur absent an injunction, and the significant risk to life, property, and natural resources without the Forest Service's ability to use aerial fire retardant far outweighs any potential harm that Plaintiff may identify. *See Forest Serv. Emps. for Env't Ethics* 674 F. Supp. 3d at 967. Plaintiff also fails to consider the significant risk of increased harm to certain species that are especially prone to threats from uncontrolled wildfire should the Court enjoin the Forest Service's use

of fire retardant. *See San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 161 F.4th 590, 600 (9th Cir. 2025) (noting that when balancing hardships and the public interest, courts retain their equitable discretion to decline an injunction under the ESA that could endanger other listed species). Moreover, Plaintiff has not specified the precise injunctive relief it requests from the Court, nor has it attempted to explain why such relief is warranted here. *See Atwood v. Shinn*, 36 F.4th 901, 903 (9th Cir. 2022) (per curiam) ("The burden of persuasion is on the movant, who must make a 'clear showing.'" (citation omitted)). At bottom, the balance of harms weighs in favor of Defendants and the Court should deny Plaintiff's request for injunctive relief.

## CONCLUSION

In sum, vacating the Biological Opinions would create the potential for significant disruptive effects to wildfire fighting efforts, which could result in increased harm to listed species, their critical habitats, and human health and safety. Such equitable relief is not warranted here when the agencies can readily provide the required explanation identified by the Court on remand. Likewise, Plaintiff has not met its burden to show that injunctive relief is warranted in the interim. Accordingly, the appropriate relief is to remand the Biological Opinions to the Wildlife agencies for further explanation without vacatur.

Dated: August 26, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
MEREDITH L. FLAX
Deputy Section Chief
NICOLE M. SMITH
Assistant Section Chief

*/s/ Bonnie Ballard*
BONNIE BALLARD
Trial Attorney (Maryland Bar No. 2211280027)
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 532-5567
Fax: (202) 305-0275
Email: bonnie.m.ballard@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief uses 14-point font and contains 2,432 words, excluding material that Local Rule 7.1(d)(2)(E) omits from the word-count requirement. I relied on Microsoft Word to obtain the word count.

*/s/ Bonnie Ballard*