IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE, NATIONAL MARINE FISHERIES SERVICE, and UNITED STATES FISH AND WILDLIFE SERVICE,<br><br>Defendants. | CV 25–66–M–DWM<br><br>OPINION and ORDER |

Pursuant to the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA"), Plaintiff Forest Service Employees for Environmental Ethics, an environmental non-profit organization, challenged the consultation process between Defendant United States Forest Service and Defendants National Marine Fisheries Service and United States Fish and Wildlife Service (together, "Wildlife Agencies") (collectively "Federal Defendants") regarding the Forest Service's nationwide application of aerial fire retardants. (Doc. 3.) According to Plaintiff, Federal Defendants failed to address that such fire retardants contain toxic heavy metals capable of harming threatened and endangered species and critical habitat in violation of the ESA. The parties filed cross-motions for

summary judgment, (Docs. 17, 21), and a motion hearing was held on July 28, 2026, (Doc. 24). Plaintiff's motion for summary judgment was granted in part and denied in part, (Doc. 29). This Court found that Federal Defendants violated the best available science requirement of the APA by omitting, without explanation, analysis of unidentified ingredients in the listed fire retardants. (*Id.*) The question of remedy is now all that remains.

## ANALYSIS

### I. Legal Standard

The APA directs that "[t]he reviewing court shall . . . set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Vacatur is the usual remedy where an agency has acted unlawfully, *All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121 (9th Cir. 2018), but a district court "is not required to set aside every unlawful agency action," *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995); *see Cal. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam) ("A flawed rule need not be vacated."). "Whether agency action should be vacated depends on how serious the agency's errors are and the disruptive consequences of an interim change that may itself be changed." *Id.* at 992 (internal quotation marks omitted). In assessing the seriousness of the error, courts "consider whether

vacating a faulty [decision] could result in possible environmental harm." *Pollinator Stewardship Council v. Env't Prot. Agency*, 806 F.3d 520, 532 (9th Cir. 2015). Another consideration is "whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same [decision] on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same [decision] would be adopted on remand." *Id.* Additionally, courts consider whether the errors are "limited in scope." *All. For the Wild Rockies v. Savage*, 375 F. Supp. 3d 1152, 1156 (D. Mont. 2019).

## II. Analysis

Plaintiff argues that the appropriate remedy is to (1) vacate the 2022 National Marine Fisheries Service Biological Opinion (NMFS_00000001–299) and the 2023 Fish and Wildlife Service Biological Opinion (FWS-00002397–2640), (2) stay the effect of vacatur only until the earlier of valid replacement biological opinions or 365 days, (3) preserve all existing avoidance measures and take limits during that interval, and (4) retain jurisdiction. (Doc. 31.) Federal Defendants contend that the Biological Opinions should be remanded to the agencies without vacatur. (Doc. 32.) Plaintiff's proposed remedy is more appropriate under the facts of this case.

Vacatur is warranted because of the "serious[ness of] the agency's errors." *Cal. Cmtys. Against Toxics*, 688 F.3d at 992. Because Federal Defendants relied on

the 2021 Risk Assessment for their determination regarding the aerial application of fire retardant nationwide, Federal Defendants' omission of all ingredients in each fire retardant product utilized "permeates" all aspects of their decisions. (Doc. 29 at 32); *Nat'l Res. Def. Council v. Kempthorne*, 506 F. Supp. 2d 322, 363–64 (E.D. Cal. 2007). The record contains no complete ingredient list for any Qualified Products List formulation, no screening results for the omitted components, and no explanation for removing the chemical profiles from Appendix B of the Biological Assessment. (Doc. 29 at 27–31); FS000258. Such an omission constitutes a critical flaw when considering that the Risk Assessment recognized mixture effects and record literature warned that unknown proprietary components could influence toxicity levels and fish mortality. (Doc. 29 at 29–31.) As a result, it is impossible to determine from the record whether or not the agencies analyzed the formulations as a whole, as Federal Defendants contend. For the same reason, the omission renders it impossible to determine "whether by complying with procedural rules, [the agencies] could adopt the same [decision] on remand[.]" *Pollinator*, 806 F.3d at 532. Vacatur is therefore warranted.

Nonetheless, the "disruptive consequences" of a vacatur order taking immediate effect are significant. *Cal. Cmtys. Against Toxics*, 688 F.3d at 992. As Federal Defendants point out and Plaintiff concedes, immediate vacatur of the Biological Opinions would "create uncertainty about the Forest Service's use of

aerial fire retardant during the pendency of the remand period, which could slow down responses to active wildfires and impede the Forest Service's ability to suppress wildfire on National Forest System lands at the height of an unprecedented wildfire season." (Doc. 32 at 7; Doc. 31 at 4). Federal Defendants also make a compelling argument that immediate vacatur will inhibit the Forest Service's ability to adequately suppress wildfires, which "could potentially push certain [endangered] species closer to extinction." (Doc. 32 at 7).

Still, past experience indicates that Federal Defendants cannot simply be relied on to promptly and properly perform the required actions on remand. This Court recently found that the Forest Service's "unpermitted aerial discharge of fire retardant into navigable waters of the United States . . . is in violation of the Clean Water Act." *Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 674 F. Supp. 3d 959, 968 (D. Mont. 2023) (hereinafter "*CWA Case*"). However, the Court neither vacated the action nor enjoined the Forest Service from utilizing the aerial deployment of fire retardant. *See id.* Rather, status reports were ordered to be provided "every six-months regarding [the agency's] progress toward obtaining a [National Pollutant Discharge Elimination System] permit until a final decision has been reached as to the issuance of said permit." *Id.* Now three years on, the Forest Service's pursuit of an NPDES permit continues to languish. *See* No. 9:22-cv-168-DLC, Doc. 69 at 2 (D. Mont. Aug. 3, 2026). As the Ninth Circuit remarked in *In re*

*Pesticide Action Network North America*, "although there is no allegation of impropriety underlying the [agency's] delay, we note that the agency has a significant history of missing the deadlines it has set in these proceedings." 798 F.3d 809, 813–15 (9th Cir. 2015). Therefore, while Federal Defendants' argument that vacatur will hinder the ability to suppress wildfires is well-taken, the agencies will not be permitted to drag the remand process out indefinitely. *See id.* at 814 ("In view of EPA's own assessment of the dangers to human health posed by this pesticide, we have little difficulty concluding it should be compelled to act quickly to resolve the administrative petition.").

Remand and vacatur with a thirteen-month stay strikes the appropriate balance between the seriousness of the Biological Opinions' flaws and the potential consequences of removing aerial fire retardant from the firefighters' tool belt. By Federal Defendants' own admission this timeline is feasible: Federal Defendants stated at oral argument that every ingredient of each fire retardant on the Forest Service's Qualified Products List, including "trade secret" ingredients, is available to the Forest Service and the Wildlife Agencies. (Doc. 29 at 31.) Further, the Forest Service's interagency agreement with the U.S. Geological Survey began in June 2024, with Phase 1 bulk and use-level testing scheduled for completion by January 2026. (Doc. 25-1 at 25–26.) Notably such testing was prompted by the acknowledgment that metals "might be present as a 'trade-secret' or as impurities

present in mined ammonium phosphate salts in the retardant formulations." (*Id.* at 22.) The agencies therefore begin remand with the withheld formulas, an existing screening method, and commissioned testing already underway or due. Moreover, Section 7 requires decisions based on the best science available when decisions are made and an agency may not defer jeopardy analysis by promising future studies. *Kempthorne*, 506 F. Supp. 2d at 359. As a result, completion of new biological opinions must rely on the best science available now, not that which may be expected at some future date. In short, questions concerning nationwide water supplies, listed species, and human health should not remain unresolved on an indeterminate timeline.

The Forest Service must therefore, within sixty days, provide the National Marine Fisheries Service and the Fish and Wildlife Service with the following information: (1) the complete formulation of every aerial long-term retardant then on the Qualified Products List, including proprietary components and reasonably ascertainable constituents or impurities; (2) the actual screening result for each component, whether screened in or out; (3) the chemical profiles removed from Appendix B and kept by the Wildland Fire Chemical Systems program; and (4) all interim and final U.S. Geological Survey metals results in its possession.

Consistent with Federal Defendants' statutory mandate, the replacement biological opinions must evaluate each formulation as a whole, address mixture

effects, use the best scientific and commercial data then available, and explain any exclusion or uncertainty. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(g)(8). Proprietary labelling may not excuse non-disclosure among the agencies or omissions from the certified remand record, and measured concentrations and nonproprietary analytical results should be public absent a particularized showing.

If the Forest Service adds or materially reformulates an aerial long-term retardant during the duration of the stay, it should first transmit the complete formulation and screening information to both consulting agencies and obtain their written determination that the interim opinions cover the change. Federal Defendants must file joint progress reports with the Court every ninety days identifying completed milestones, outstanding information, and the expected dates of draft and final opinions.

The Court retains jurisdiction over the remand schedule and any issues that may arise in the remand process. The Court does not retain jurisdiction over any challenge that may arise following the issuance of any new biological opinions or decision documents. Any extension request from the agencies must be filed at least sixty days before the deadline and supported by evidence of extraordinary, unforeseen circumstances, and should not be based on competing priorities or plans for additional study. If the agencies have not issued valid replacement

biological opinions by November 1, 2027, the stay will be dissolved and vacatur shall take effect automatically.

Accordingly, IT IS ORDERED that:

(1) The National Marine Fisheries Service 2022 Biological Opinion (NMFS_00000001–299) and the Fish and Wildlife Service's 2023 Biological Opinion (FWS-00002397–2640) are VACATED and REMANDED for further proceedings in compliance with the Court's merits ruling, (Doc. 29).

(2) Vacatur is STAYED until the earlier of the issuance of replacement biological opinions or November 1, 2027. In the absence of an intervening order, the stay will automatically be lifted and vacatur will take effect on November 1, 2027.

(3) Federal Defendants must file a joint status report every ninety days until new biological opinions are issued.

(4) The Clerk is directed to enter judgment consistent with the Court's August 5, 2026, Order, (Doc. 29), and this Order and close the case.

DATED this 30th day of September, 2026.

12:39 P.M.

Donald W. Molloy, District Judge
United States District Court